UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ERNIE M. GARCIA, | ) | No. ED CV 10-01127-JVS (VBK) |
| | ) | |
| Plaintiff, | ) | ORDER RE DISMISSAL WITH LEAVE TO |
| | ) | AMEND |
| v. | ) | |
| | ) | |
| P. COVELLO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pro se prisoner Ernie M. Garcia (hereinafter referred to as "Plaintiff") filed a Civil Rights Complaint Pursuant to 42 U.S.C. §1983 on August 5, 2010, pursuant to the Court's Order re Leave to File Action without Prepayment of Full Filing Fee. Plaintiff has named as Defendants Lt. P. Covello; Correctional Sergeant G. Wheeler; Correctional Officer C. Boyd; Correctional Officer Cervantes; Correctional Officer C. Holthe; Correctional Officer C. Lee; Correctional Officer V. Lopez and Correctional Officer J. Ruedas; Correctional Officer M. Valencia, in both their individual and official capacities.

//

//

**STATEMENT OF FACTS**

Plaintiff alleges he was an inmate at Ironwood State Prison on Alpha Yard ("A-Yard") on September 7, 2008. On that date, Plaintiff was placed in Administrative Segregation ("Ad-Seg") for being in possession of a cellular phone. Plaintiff alleges before this incident occurred, he experienced continuous harassment by California Department of Corrections and Rehabilitation ("CDCR") officials wherein random cell searches were conducted with negative results. Plaintiff's personal property would be destroyed/broken during these cell searches; however, through the 602 grievance system, Plaintiff's personal property was replaced. (Complaint at ¶ 14.) Plaintiff received a Rules Violation Report ("115") for "possession of a cellular phone" on September 7, 2008. While being detained in a cage at the program office, waiting to be housed in Ad-Seg, Plaintiff was interrogated by Defendant Correctional Officers regarding Plaintiff's possession of a cell phone. Plaintiff refused to answer any questions. Plaintiff was told by Defendant Correctional Officers that "he would make things worse for himself if he didn't cooperate." Plaintiff believed this comment was just a false threat. (Id. at ¶ 15.)

On September 10, 2008, while in Ad-Seg pending investigation, CDCR officials came to Plaintiff's cell door in Ad-Seg and told Plaintiff and his cellie to "cuff-up." Plaintiff asked where they were going and was told by the escorting Correctional Officers that they were going to the concrete group yard. When Plaintiff arrived at the concrete group yard, the yard gate was closed behind them. Plaintiff felt uneasy, realizing he and his cellmate were placed on a Sensitive Needs Yard ("SNY")/Protective Custody ("PC") yard. Id.

1    Plaintiff alleges there were 10 individuals who were in fact
2    SNY/PCs who approached Plaintiff and his cellie asking if they were
3    "Southsiders."   Plaintiff responded, "yes," when one of the
4    individuals responded back to Plaintiff and said, "Fuck Southsiders.
5    You're on a SNY yard."   Plaintiff and his cellmate knew their lives
6    were in danger and found themselves in a gladiator-type scenario with
7    no way out.   Id. at ¶ 17.   Plaintiff alleges as a general population
8    inmate he should not have been placed on this yard.   A melee then
9    resulted.   Plaintiff was in fear for his life being outnumbered 10 to
10   2 and had to fight to protect his life.   Plaintiff was then sprayed
11   with a "hydro force water restraint system" three times. [This is a
12   cannon that shoots gallons of mace in one shot (not water).]   After
13   the third direct shot at Plaintiff he could no longer breathe and his
14   eyes and skin started to burn.   Plaintiff started to hyperventilate,
15   as he is asthmatic.   Plaintiff could no longer see and struggled to
16   breathe while fearing for his well-being.   Id. at ¶ 18.

17       At that time, Correctional Officers ordered all inmates to get
18   down.   Plaintiff was told to lay face down on the ground in puddles of
19   mace.   Plaintiff alleges that the same Correctional Officers who
20   responded to the alarm were the ones who escorted Plaintiff to the
21   group yard.   When Plaintiff asked for help, one Correctional Officer
22   laughed and said, "Does that shit burn, tough guy?"   Plaintiff alleges
23   that he knew that this was retaliation for not giving up information
24   on how he came into possession of a cell phone.   Id. at ¶ 19.

25       Plaintiff was then handcuffed and removed from the yard.   He was
26   taken back to Ad-Seg and put in a lower A Section shower to self-
27   decontaminate.   However, when placed in the shower, Defendants Boyd
28   and Ruedas made Plaintiff stand under hot water to decontaminate.

After numerous complaints, Defendants removed Plaintiff from the shower and allowed him to stand under cool water. Plaintiff was then taken back to his cell. For two days, Plaintiff suffered pain when he urinated from the mace and being forced to lay on the ground. Plaintiff was then given a Rules Violation Report and found guilty for battery on inmates. (Id. at ¶ 20.)

Plaintiff was never seen by a committee or classified for group yard before this incident and alleges he should never have been pulled out for group yard. Plaintiff filed a 602 administrative appeal regarding the incident; however, he never received a response. (Id. at ¶ 21.)

On March 18, 2009, Plaintiff was "picked up" by an Institutional Gang Investigator ("IGI") and validated as a prison gang associate. While IGI Smith handcuffed and escorted Plaintiff back to Ad-Seg, Defendant Lt. Covello again interviewed Plaintiff concerning the name of the "prison official" who provided the cell phone. Plaintiff refused to interview or answer any questions. IGI Smith stated that, "By refusing to cooperate, I was making shit worse for myself and that I would never walk mainline again." (Id. at ¶ 23.)

Plaintiff alleges that these unjust and unethical methods have continually been used to intimidate inmates. Plaintiff submitted an administrative appeal regarding his prison gang validation. Defendant Lt. Covello denied the appeal. Defendant Lt. Covello used intimidation methods and stated to Plaintiff that, "You don't want to fuckin' bump heads with me, I'll make sure you never walk mainline." Plaintiff alleges this was because he did not give the information regarding the cell phone that was being requested.

Plaintiff is now validated and housed in California Correctional

Institution ("CCI") Tehachapi - Security Housing Unit ("SHU"). Plaintiff alleges this is designed to reduce visual, environmental and social stimulation. Plaintiff alleges he is subjected to extreme isolation and environmental deprivation. (Id at ¶ 25.)

Plaintiff alleges that the incident on September 10, 2008 resulting in a melee constituted an unsafe condition and was gross negligence, retaliatory and constituted cruel and unusual punishment. Plaintiff alleges his due process rights were violated and he suffered intentional infliction of emotional distress under the Eighth and Fourteenth Amendments. (Id. at ¶ 27.)

Plaintiff seeks a preliminary and permanent injunction ordering Defendants Lt. Covello, Wheeler, Boyd, Cervantes, Holthe, Lee, Lopez, Ruedas and Valencia to cease their tactics and retaliation used against inmates and procedures relating to prison gang validation, debriefing and segregation and to promulgate an internal investigation of the tactics and retaliation used against inmates and the policy and practice of placing and/or retaining prisoners in Ad-Seg and/or SHU based on assumptions and mere affiliation (Id. at ¶ 28);[1] expunge from

---

[1] Plaintiff seeks injunctive relief against Defendants. Plaintiff is currently housed at California Correctional Institute at Tehachapi, California, and the past events at issue in this action occurred at Ironwood State Prison. When an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is moved to another prison and is no longer subjected to those conditions. Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).

Further, any award of equitable relief is governed by the PLRA, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no farther than necessary to correct the violation of the Federal right of a particular Plaintiff or Plaintiffs. The Court shall not grant or approve any prospective relief unless the Court finds that such relief is narrowly drawn, extends no farther than necessary to correct the violation of the federal right and is the least intrusive means to

1  Plaintiff's prison file the false, unreliable and insufficient
2  information used to retain Plaintiff in the SHU and release Plaintiff
3  from the SHU and back to general population (Id. at ¶ 31);
4  compensatory damages in the amount of $25,000.00 against each
5  Defendant and punitive damages in the amount of $35,000.00 against
6  each Defendant.

7

8                              **STANDARD OF REVIEW**

9      Because Plaintiff is seeking to proceed in forma pauperis, the
10  Court shall review such a complaint "as soon as practicable after
11  docketing."  Pursuant to 28 U.S.C. §1915(e)(2), the District Court is
12  required to dismiss a complaint if the Court finds that the complaint
13  (1) is legally frivolous or malicious, (2) fails to state a claim upon
14  which relief may be granted, or (3) seeks monetary relief from a
15  defendant immune from such relief.  28 U.S.C. §1915(e)(2)(B) (re: all
16  in forma pauperis complaints).

17      A complaint may also be dismissed for lack of subject matter
18  jurisdiction, pursuant to F.R.Civ.P. 12(b)(1).  Neitzke v. Williams,
19  490 U.S. 319, 327 n.6, 109 S.Ct. 1827 (1989)(unanimous
20  decision)(patently insubstantial complaint may be dismissed under Rule
21  12(b)(1) for lack of subject matter jurisdiction.  When considering a
22  dismissal, a Court must accept as true all allegations and material
23  facts and must construe those facts in a light most favorable to the
24  plaintiff.  Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

25  _____

26  correct the violation of the federal right."  18 U.S.C.
    §3626(a)(1)(A).  Based on the nature of the claims at issue in this
27  action, which involve past conduct, Plaintiff is not entitled to
    injunctive relief and is confined to seeking money damages for the
28  violations of his federal rights.

1   However, a "court [is not] required to accept as true allegations that

2   are merely conclusory, unwarranted deductions of fact, or unreasonable

3   inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th

4   Cir. 2001).    Nor is a Court "bound to accept as true a legal

5   conclusion couched as a factual allegation." Ashcroft v. Iqbal, ___

6   U.S. ___, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).

7          "To survive a motion to dismiss, a complaint must contain

8   sufficient factual matter, accepted as true, to 'state a claim to

9   relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949

10  (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct.

11  1955 (2007)).   "A claim has facial plausibility when the plaintiff

12  pleads factual content that allows the Court to draw the reasonable

13  inference that the defendant is liable for the misconduct alleged."

14  Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(citing Twombly,

15  550 U.S. at 556.)   "The plausibility standard is not akin to a

16  'probability requirement,' but it asks for more than a sheer

17  possibility that a defendant acted unlawfully." (Id.)   Although a

18  complaint need not include "'detailed factual allegations,' ... [a]

19  pleading that offers 'labels and conclusions' or 'a formulaic

20  recitation of the elements of the cause of action will not do.'"

21  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).   The

22  Complaint must contain "factual content that allows the court to draw

23  the reasonable inference that the defendant is liable for the

24  misconduct alleged." Iqbal, 129 S.Ct. at 1949. "[W]here the well-

25  pleaded facts do not permit the court to infer more than the mere

26  possibility of misconduct, the complaint has alleged – but it has not

27  'show[n]' – 'that the pleader is entitled to relief.'" (Id. at 1950

28  [quoting Fed.R.Civ.P. 8(a)(2) (internal brackets omitted).

1    In civil rights cases in which the Plaintiff appears <u>pro se</u>, the

2    pleadings must be construed liberally, so as to afford the plaintiff

3    the benefit of any doubt as to the potential validity of the claims

4    asserted.  <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 623

5    (9th Cir. 1988).   If, despite such liberal construction, the Court

6    finds that the complaint should be dismissed for failure to state a

7    claim, the Court has the discretion to dismiss the complaint with or

8    without leave to amend.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126-30 (9th

9    Cir. 2000).   A <u>pro se</u> litigant should be given leave to amend, unless

10   it is clear that the deficiencies of the complaint cannot be cured by

11   amendment.  <u>Lopez</u>, 203 F.3d at 1130-31; <u>Cato v. United States</u>, 70 F.3d

12   1103, 1106 (9th Cir. 1995); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448 (9th

13   Cir. 1987).

14

15                              **<u>DISCUSSION</u>**

16       For all of the following reasons, the Complaint should be

17   dismissed with leave to amend.

18

19       **A.    <u>Section 1983 Requirements</u>.**

20       In order to state a claim under section 1983, a plaintiff must

21   allege that:  (1) the defendants were acting under color of state law

22   at the time the complained of acts were committed; and (2) the

23   defendants' conduct deprived plaintiff of rights, privileges, or

24   immunities secured by the Constitution or laws of the United States.

25   <u>West v. Atkins</u>, 487 U.S. 42, 108 S.Ct. 2250 (1988); <u>Karim-Panahi v.</u>

26   <u>Los Angeles Police Dept.</u>, 839 F.2d 621, 624 (9th Cir. 1988); <u>Haygood</u>

27   <u>v. Younger</u>, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc), <u>cert.</u>

28   <u>denied</u>, 478 U.S. 1020 (1986).   Liability under section 1983 is

predicated upon an affirmative link or connection between the
defendants' actions and the claimed deprivations. See Rizzo v. Goode,
423 U.S. 362, 372-73, 96 S.Ct. 598 (1976); May v. Enomoto, 633 F.2d
164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th
Cir. 1978).

> A person deprives another of a constitutional right,
> where that person "does an affirmative act, participates in
> another's affirmative acts, or omits to perform an act which
> [that person] is legally required to do that causes the
> deprivation of which complaint is made." [citation] Indeed,
> the "requisite causal connection can be established not only
> by some kind of direct personal participation in the
> deprivation, but also by setting in motion a series of acts
> by others which the actor knows or reasonably should know
> would cause others to inflict the constitutional injury."

Johnson v. Duffy, 588 F.2d at 743-44.

**B.**   **Plaintiff Fails to State a Due Process Claim Based on His
Placement in Administrative Segregation**.

Plaintiff alleges that his due process rights were violated when
he was placed in Ad-Seg pending investigations into his possession of
a cell phone.

In general, a prisoner has no liberty interest in avoiding
transfer to more restrictive conditions of confinement, such as a
transfer from the general population to segregation, unless he can
show an atypical and significant hardship in relation to the ordinary
incidents of prison life. Wilkinson v. Austin, 545 U.S. 209, 221-23,
125 S.Ct. 2384 (2005); Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct.

2293, 2300 (1995). "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." <u>Serrano v. Francis</u>, 345 F.3d 1071, 1078 (9th Cir. 2003); <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997)(administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence). Administrative segregation may implicate due process if the confinement imposes an atypical and significant hardship. <u>See</u>, <u>e.g.</u>, <u>Wilkinson</u>, 545 U.S. at 223-24, 125 S.Ct. at 2394-95 (inmates' liberty interests were implicated by their indefinite confinement in highly restrictive "supermax" prison, where the inmates were deprived of almost all human contact and were disqualified from parole consideration); <u>Serrano</u>, 345 F.3d at 1078-79 (placing disabled inmate, without his wheelchair, in segregation unit not equipped for disabled persons gave rise to a liberty interest); <u>Ramirez v. Galaza</u>, 334 F.3d 850, 861 (9th Cir. 2003)(directing District Court to consider two-year duration of administrative segregation in determining whether placement imposed an atypical and significant burden).

Based on the allegations contained in the Complaint, Plaintiff's placement in Ad-Seg was within the range of confinement to be normally expected by prison inmates in relation to the ordinary incidents of prison life. <u>See</u> <u>Sandin</u>, 515 U.S. at 483-84.

Moreover, a prisoner has no liberty interest in where he is housed. <u>McKune v. Lile</u>, 536 U.S. 24, 39, 122 S.Ct. 2017 (2002)(noting that "the decision where to house inmates is at the core of prison administrators' expertise" and that inmates have no protectable interest in remaining at a particular facility); <u>Meacham v. Fano</u>, 427 U.S. 215, 225, 96 S.Ct. 2532 (1976)(holding that transfer to a higher security prison does not implicate a liberty interest); <u>Pratt v.</u>

Rowland, 65 F.3d 802, 806 (9th Cir. 1995)("prisoners generally have no constitutionally protected liberty interest in being held at, or remaining at, a given facility"); Olim v. Wakinekona, 461 U.S. 238, 244-48, 103 S.Ct. 1741 (1983)(It is well established that inmates do not have a constitutional right to be housed at a particular facility or institution, or to be transferred, or not transferred from one facility or institution to another.)

   **C.   Plaintiff's Harassment Claim Fails to State a Claim Under 42 U.S.C. §1983**.

   Plaintiff alleges that Defendants harassed him by conducting random cell searches (Complaint ¶ 14), or during prison investigations (Complaint ¶¶ 15, 16, 23, 24, 27). Such allegations of harassment, even as made to deny Plaintiff access to the grievance procedure, do not state a claim under the Constitution. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987)(mere threat does not constitute constitutional wrong, nor do allegations that naked threat was for purpose of denying access to courts compel contrary result). See also Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)(abusive language directed at inmate's ethnic background held insufficient to raise constitutional claim); Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1353 (9th Cir. 1981), affirmed sub nom, Kush v. Rutledge, 460 U.S. 719, 103 S.Ct. 1483 (1983); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998)(disrespectful and assaultive comments by prison guard not enough to implicate Eighth Amendment); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987)(directing vulgar language at prisoner does not state constitutional claim). See also Corales v. Bennett, 567 F.3d 554, 564-65 (9th Cir. 2009).

1  Accordingly, Plaintiff's claims of harassment or threats are dismissed
2  without leave to amend.

3

4       **D.   <u>Plaintiff Fails to State Claims Under the Due Process Clause</u>**
5            **<u>Based on the Deprivation of His Property</u>**.

6       Plaintiff alleges his due process rights were violated by various
7  prison officials who confiscated property from him and destroyed
8  certain personal items. (<u>See</u> Complaint ¶ 14.)  The Due Process Clause
9  protects prisoners from being deprived of property without due process
10 of law, <u>Wolff v. McDonald</u>, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974),
11 and prisoners have a protected interest in their personal property.
12 <u>Hansen v. May</u>, 502 F.2d 728, 730 (9th Cir. 1974). However, "[a]n
13 unauthorized intentional deprivation of property by a state employee
14 does not constitute a violation of the procedural requirements of the
15 Due Process Clause of the Fourteenth Amendment if a meaningful post-
16 deprivation remedy for the loss is available." <u>Hudson v. Palmer</u>, 468
17 U.S. 517, 533, 104 S.Ct. 3194 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527,
18 541-44, 101 S.Ct. 1908 (1981), <u>overruled on other grounds</u> by <u>Daniels</u>
19 <u>v. Williams</u>, 474 U.S. 327, 106 S.Ct. 662 (1986)(a deprivation of
20 property allegedly caused by a state employee does not constitute a
21 valid §1983 constitutional claim if the state provides other adequate
22 post-deprivation remedies).   The Ninth Circuit has held that
23 California law provides an adequate post-deprivation remedy for
24 property deprivations caused by public officials. <u>Barnett v. Centoni</u>,
25 31 F.3d 813, 816 (9th Cir. 1994); <u>see</u> Cal. Gov't. Code §§810-997.6.
26 It is immaterial whether or not Plaintiff succeeds in redressing his
27 loss through the available state remedies; it is the existence of
28 these alternate remedies that bars him from pursuing a §1983

1  procedural due process claim. <u>Willoughby v. Luster</u>, 717 F.Supp. 1439,

2  1443 (D. Nev. 1989).  For these reasons, Plaintiff's allegations do

3  not support a claim under §1983 for violation of the Due Process

4  Clause of the Fourteenth Amendment based on the loss of his personal

5  property.

6

7      E.   **Plaintiff Fails to State a First Amendment Retaliation Claim**

8           **Against All Defendants**.

9      Plaintiff alleges that Defendants retaliated against him by

10 placing him on a SNY/PC yard prior to him being cleared or seen by ICC

11 resulting in a melee and causing Plaintiff intentional infliction of

12 emotional distress. (Complaint ¶ 27.)

13     Allegations of retaliation against a prisoner's First Amendment

14 rights to speech or to petition the Government may support a §1983

15 claim. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985). <u>See also</u>

16 <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v.</u>

17 <u>Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context,

18 a viable claim of First Amendment retaliation entails five basic

19 elements: (1) an assertion that a state actor took some adverse action

20 against an inmate (2) because of (3) that prisoner's protected

21 conduct, and that such action (4) chilled the inmate's exercise of his

22 First Amendment rights and (5) the action did not reasonably advance

23 a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559,

24 567-68 (9th Cir. 2005); <u>see also</u> <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269

25 (9th Cir. 2009).  The prisoner must prove all the elements of a viable

26 retaliation claim, including the absence of legitimate correctional

27 goals for the conduct of which he complains. <u>Pratt v. Rowland</u>, 65

28 F.3d 802, 806 (9th Cir. 1995).  An allegation of retaliation against

a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under §1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

A plaintiff asserting a retaliation claim must demonstrate a causal nexus between that alleged retaliation and plaintiff's protected activity (i.e., filing a legal action). Hartman v. Moore, 547 U.S. 250, 259, 126 S.Ct. 1695 (2005); see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977). The requisite causation must be but-for causation, i.e., without the prohibited animus, the adverse action would not have been taken. Hartman, 547 U.S. at 260. Upon a prime facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of. Id. If there is a finding that retaliation was not a but-for cause of the action of which the plaintiff complains, the claim fails for lack of causal connection between unconstitutional motive and resulting harm despite the proof of retaliatory animus in the official's mind. Id. "It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort, if that action would have been taken anyway." Id.

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School District, 467 F.3d 755, 770 (9th Cir. 2006). Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. However, not every allegedly adverse

action will be sufficient to support a claim under §1983 for retaliation.  In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff.  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 568 (9th Cir. 2005)(arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault and retaliation for filing grievances); <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171 (9th Cir. 2004)(retaliatory placement in administrative segregation for filing grievances); <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288 (9th Cir. 2003)(retaliatory validation as gang member for filing grievances); <u>Hines v. Gomez</u>, 108 F.3d 265, 267 (9th Cir. 1997)(retaliatory issuance of false rules violation and subsequent finding of guilt); <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1138 (9th Cir. 1989)(inmate labeled him a snitch and approached by other inmates and threatened with harm as a result).

A plaintiff must submit evidence, either direct or circumstantial, establishing a link between the exercise of constitutional rights and the alleged retaliatory action.  <u>Pratt</u>, 65 F.3d at 806.  The timing of events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. (<u>See Id</u>.)

Plaintiff's allegations fail to show that all Defendants retaliated against him.  Plaintiff in conclusory language alleges that Defendants Boyd and Ruedas retaliated against him.

Plaintiff also alleges retaliatory cell searches. (Complaint ¶ 14.)  However, Plaintiff does not allege that Defendants entered his cell in response to conduct protected by the First Amendment.  Inmates have no reasonable expectation of privacy in a prison cell.  <u>Hudson v.</u>

1   <u>Palmer</u>, 468 U.S. 517, 104 S.Ct. 3194 (1984).  Plaintiff fails to
2   assert that the alleged retaliatory actions did not advance legitimate
3   goals of the institution. However, as Plaintiff may be able to correct
4   the deficiencies, this claim is dismissed with leave to amend.

5

6       **F.    Plaintiff Fails to State a Claim Based on the Processing of**
7             **His Grievances**.

8       "An inmate has no due process rights regarding the proper
9   handling of grievances."  <u>Wise v. Washington State Department of</u>
10  <u>Corrections</u>, 244 Fed. Appx. 106, 108 (9th Cir. 2007), <u>cert. denied</u>, 552
11  U.S. 1282 (2008).[2]  <u>See</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir.
12  2003)("Inmates lack a separate constitutional entitlement to a
13  specific prison grievance procedure."); <u>Mann v. Adams</u>, 855 F.2d 639,
14  640 (9th Cir. 1998)("There is no legitimate claim of entitlement to a
15  grievance procedure.").  Thus, Plaintiff cannot state a claim based on
16  the mishandling or denial of his grievances.

17

18      **G.    Supervisory Liability**.

19      Supervisory personnel generally are not liable under 42 U.S.C.
20  §1983 on any theory of respondeat superior or vicarious liability in
21  the absence of a state law imposing such liability.  <u>See</u> <u>Redman v.</u>
22  <u>County of San Diego</u>, 942 F.2d 1435, 1443-44 (9th Cir. 1991), <u>cert.</u>
23  <u>denied</u>, 502 U.S. 1074 (1992).  A supervisory official may be liable
24  under §1983 only if he or she was personally involved in the
25  constitutional deprivation, or if there was a sufficient causal

26  _____

27      [2]   The Court may cite unpublished Ninth Circuit decisions
    issued on or after January 1, 2007.  United States Court of Appeals
28  for the Ninth Circuit Rule 36-3(b); Fed.R.App.P. 32.1(a).

1  connection between the supervisor's wrongful conduct and the
2  constitutional violation.  *See* *Id.* at 1446-1447.  To premise a
3  supervisor's alleged liability on a policy promulgated by the
4  supervisor, the plaintiff must identify a specific policy and
5  establish a "direct causal link" between that policy and the alleged
6  constitutional deprivation.  *See*, *e.g.*, *City of Canton, Ohio v.*
7  *Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989); *Oviatt v. Pearce*,
8  954 F.2d 1470, 1474 (9th Cir. 1992).  A "failure to train" theory can
9  be the basis for a supervisor's liability under §1983 in only limited
10 circumstances.  *See* *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-
11 90, 109 S.Ct. 1197 (1989)(liability only where failure to train
12 amounts to deliberate indifference).
13
14                    **CONCLUSION AND ORDER**
15     In an abundance of caution, Plaintiff will be afforded an
16 opportunity to amend his Complaint to attempt to overcome the defects
17 discussed above, and to allege a cognizable constitutional claim
18 Accordingly, **IT IS HEREBY ORDERED**: (1) Plaintiff's Complaint is
19 dismissed with leave to amend; and (2) Plaintiff is granted 30 days
20 from the date of this memorandum and order within which to file a
21 "First Amended Complaint."  The First Amended Complaint must be
22 complete within itself and shall not incorporate by reference and
23 portion of the original Complaint.  Plaintiff may not add new parties
24 //
25 //
26 //
27 //
28 //

1  without leave of the Court.  Failure to comply with the requirements

2  set forth in this Memorandum and Order may result in a recommendation

3  that this action be dismissed with prejudice.

4

5  DATED:  January 3, 2011 _____/s/_____

6                               VICTOR B. KENTON

                               UNITED STATES MAGISTRATE JUDGE